IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

OLIVER W. HOLMES,

    Plaintiff,

v.                                                     Civil Action No. 3:18-cv-709

SYLVIA GROOMS,
et al.,

    Defendants.

## MEMORANDUM OPINION

By ORDER entered on May 17, 2019 (ECF No. 48), the Court directed the parties to provide supplemental briefing on whether the Court has subject matter jurisdiction over the claims asserted in the FIRST AMENDED COMPLAINT ("FAC") (ECF No. 27). Having considered PLAINTIFF OLIVER HOLMES' SUPPLEMENTAL BRIEF REGARDING SUBJECT MATTER JURISDICTION (ECF No. 49), DEFENDANTS' JOINT SUPPLEMENTAL BRIEF REGARDING SUBJECT MATTER JURISDICTION (ECF No. 50), and PLAINTIFF OLIVER HOLMES' SUPPLEMENTAL REPLY BRIEF REGARDING SUBJECT MATTER JURISDICTION (ECF No. 51), the Court concludes that it lacks subject matter jurisdiction over the claims asserted in the FAC. However, the FAC will be dismissed without prejudice to the filing of an action in compliance with the requirements of 29 U.S.C. § 501(b).

## BACKGROUND

Oliver Holmes ("Holmes") is a member of the American Postal Workers Union Local 199 ("APWU" or the "Union"). See FAC ¶ 1. He brings this action against the Union and three of its current officers, Sylvia Grooms ("Grooms") (the current President), Sherry Gay ("Gay") (the current Secretary), and Jerome Cosby ("Cosby") (the current Director of Industrial Relations) (collectively, the "Defendants"). Id. ¶¶ 3-5.

The FAC alleges that Holmes attempted to investigate certain perceived improper expenditures by the Union on behalf of Gay and Cosby.[1] Holmes also alleges that he was improperly thwarted in his efforts to investigate these matters by the Defendants. See generally FAC ¶¶ 9-23. Holmes also alleges that Grooms maliciously prosecuted him for defamation and slander "to retaliate against Plaintiff for speaking out about misuse of union funds." Id. ¶¶ 24-28.

Count I of the FAC alleges a violation of fiduciary duties by Grooms, Gay, and Cosby under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a). Count II of the FAC alleges a state law claim for breach of fiduciary duty against

---

[1] According to the FAC, Cosby received "fifteen times more per month in transportation reimbursement than the previous APWU Director of Industrial Relations" and Gay was paid for APWU duties without demonstrating that she was "on leave for from her regular Postal Service position." See FAC ¶¶ 9-23.

2

Grooms, Gay, and Cosby. Counts III and IV of the FAC allege state law breach of contract claims against the Union. And, Count V alleges a state law malicious prosecution against Grooms.

In response to the FAC, the Defendants filed DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF No. 29) pursuant to Fed. R. Civ. P. 12(b)(6). In reviewing that Motion, and the parties' supporting and opposing memoranda thereto (ECF Nos. 30, 36, 37), it appeared that the Court might lack subject matter jurisdiction over the case because: (1) 29 U.S.C. § 501(b) requires that "[n]o such proceeding [for violations of fiduciary duties under 29 U.S.C. § 501(a)] shall be brought except upon leave of the court obtained upon verified application and for good cause shown," and Holmes did not seek leave of court to file the action; and (2) the FAC alleged that supplemental jurisdiction over the state law claims in Counts II through V was proper under 28 U.S.C. § 1343, but that statute pertains to "civil rights and elective franchise." The FAC made no reference to 28 U.S.C. § 1367, the statute pertaining to supplemental jurisdiction over state law claims. Because of these concerns, the Court ordered additional briefing on whether it had subject matter jurisdiction over all five Counts in the FAC. See ECF No. 48.

The parties have submitted their supplemental briefing on subject matter jurisdiction. ECF Nos. 49, 50, 51. Having considered the supplemental briefing, the Court is satisfied that the facts

3

and legal contentions are adequately presented in the materials before the Court; and that, therefore, oral argument would not aid the decisional process. The matter is ripe for decision.

**DISCUSSION**

**A. Legal Framework**

Count I of the FAC is based on the LMRDA, 29 U.S.C § 501. Section 501(a) establishes that certain union officials owe their union fiduciary duties.[2] If a covered union official violates the provisions of Section 501(a), then subsection (b) comes into play. Subsection (b) is entitled "Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; <u>jurisdiction</u>; leave of court; counsel fees and expenses" (emphasis added).

In relevant part, Section 501(b) reads:

> When any [covered union official] is alleged to have violated the duties declared in subsection (a) and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time <u>after being requested to do so by any member of the labor organization</u>, such member may sue such [covered union official] in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an

---

[2] These officials, for example, shall "hold [union] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder. . . ." 29 U.S.C. § 501(a).

4

> accounting or other appropriate relief for the benefit of the labor organization. <u>No such proceeding shall be brought</u> except upon <u>leave of the court</u> obtained upon <u>verified application</u> and <u>for good cause shown</u>, which application may be made ex parte.

(emphasis added). Based on the plain text of the statute, Section 501(b) imposes three requirements of a plaintiff who files suit thereunder. First, the plaintiff must make certain demands on the union, its governing board, or its officers that are refused or ignored. Second, the plaintiff must receive "leave of the court obtained upon verified application" before bringing such an action. Third, to secure leave of court to sue, the plaintiff must demonstrate "good cause." <u>See</u> 29 U.S.C. § 501(b).

"[C]ourts, including [the Supreme Court], have an independent obligation to determine whether subject matter jurisdiction exits, even in the absence of a challenge from any party." <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 513 (2006); <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 583 (1999); <u>see also</u> Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Here, the Court has raised the subject matter jurisdiction issue <u>sua sponte</u>. It is now appropriate to turn to that issue.

5

## B. The Court Lacks Subject Matter Jurisdiction Over Count I

### a. Section 501(b) Is Properly Understood As A Subject Matter Jurisdiction Limitation

In their supplemental briefing, the parties are in accord that 29 U.S.C. § 501(b) is a subject matter jurisdiction requirement.[3] The parties are correct that Section 501(b) operates as a limit on the subject matter jurisdiction. Thus, the statute must be narrowly construed. See, e.g., Phillips v. Osborne, 403 F.2d 826, 828 (9th Cir. 1968) ("[S]tatutes extending federal jurisdiction, such as Section 501(b), are narrowly construed so as not to reach beyond the limits intended by Congress."); id. at 830 ("Specific clauses of Section 501(b) have been held to reflect the congressional purpose to limit federal jurisdiction."); Austin v. Trandell, 207 F. Supp. 2d 616, 622 (E.D. Mich. 2002) ("[T]he leave of court requirement is a jurisdictional prerequisite to suit."); see also, Commer v. Am. Fed'n of State, Cty., 272 F. Supp. 2d 332, 337 (S.D.N.Y. 2003) (finding no subject matter jurisdiction when union member provided no evidence of demands on the union and did not seek leave from the Court to file complaint); Operative Plasterers & Cement Masons v. Benjamin, 776 F. Supp. 1360, 1365 (N.D. Ind. 1991) ("Section 501(b) is properly read as both a cause

---

[3] See ECF No. 49 at 2 ("Mr. Holmes has satisfied the subject matter prerequisites of LMRDA Section 501(b)"); ECF No. 50 at 2 ("Plaintiff has failed to satisfy the prerequisites of LMRDA Section 501(b), which are prerequisites to the exercise of jurisdiction by this Court.").

of action on behalf of individual members and limiting federal court jurisdiction over suits by individual members"); <u>Intern. Longshoremen's v. Va. Intern. Terminals</u>, 928 F. Supp. 655, 658 (E.D. Va. 1996) (quoting language from <u>Benjamin</u>); cf. <u>Brink v. DaLesio</u>, 453 F. Supp. 272, 275-79 (D. Md. 1978) (appearing to assume that § 501(b)'s requirements were jurisdictional but finding them satisfied). But see <u>Dist. of Columbia Nurses Ass'n v. Brown</u>, 153 F. Supp. 3d 1, 3 (D.D.C. 2016).

In recent years, the Supreme Court of the United States has sought to clarify the distinction between "jurisdictional prescriptions and nonjurisdictional claim-processing rules." See <u>Fort Bend Cty. v. Davis</u>, 587 U.S. \_\_\_, slip. op. at 7 (2019); <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 510-16 (2006). The parties did not address this distinction in their supplemental briefing on jurisdiction. However, the decisions in <u>Fort Bend</u> and <u>Arbaugh</u> support the parties' argument (and the Court's conclusion) that Section 501(b) is jurisdictional.

As the Supreme Court has held, the "word 'jurisdictional' is generally reserved for prescriptions delineating a class of cases a court may entertain (subject matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." <u>Fort Bend</u>, slip op. at 6. On the other hand, "claims-processing rules" refer to rules that require "parties take certain procedural steps at certain specified times." <u>Id.</u> at

7

7; see also Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011).[4]

Where Congress has "clearly state[d] that a threshold limitation on a statute's scope shall count as jurisdictional," courts must so treat it, but where it has not done so, such a limitation should be treated as non-jurisdictional. Arbaugh, 546 U.S. at 515-16; Fort Bend, slip op. at 8-9. A provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts" is not jurisdictional. Arbaugh, 546 U.S. at 515 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982)). However, to "clearly state" that a statute is "jurisdictional," Congress need not "incant magic words," and courts may consider "context, including [the Supreme Court's] interpretations of similar provisions in many years past" to determine Congress' intent. Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153-54 (2013). It is also appropriate to use the normal tools of statutory interpretation, particularly the language of the provision at issue and its placement in the broader statutory scheme, to ascertain Congress' intent. See Henderson, 562 U.S. at 438-40.

---

[4] As examples of claims-processing rules, the Supreme Court in Fort Bend cited, inter alia, the Copyright Act's registration requirement; the Railway Labor Act's mandatory settlement conference requirement; and Title VII's 15-employer requirement. See Fort Bend, slip op. at 7-8.

8

Under these Supreme Court precedents, Section 501(b) delineates a jurisdictional limit. That conclusion is supported by the text, the structure, and the purpose of the statute.

First, the text of the statute speaks in mandatory language and limits the filing of particular types of "proceedings" in this Court. While mandatory language alone does not make a provision jurisdictional (i.e. is not sufficient), see Henderson, 562 U.S. at 439, it does appear to be a necessary element to a finding that the statutory text is jurisdictional. See Patchak v. Zinke, 138 S.Ct. 897, 905-06 (2018) (provision stating that an "action" related to certain property "shall not be filed or maintained in a Federal Court" was jurisdictional); id. at 905-06 (citing other cases using similar mandatory language); Sebelius, 568 U.S. at 154.

Under Section 501(b), a claim by a union member for a breach of fiduciary duty may be brought in "any district court of the United States or any State court of competent jurisdiction," but "[n]o such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte." 29 U.S.C. § 501(b) (emphasis added). This language is mandatory. See Patchak, 138 S.Ct. at 905-06; cf. Gonzalez v. Thaler, 565 U.S. 134, 142 (2012) (in habeas context, "until a [certificate of appealability ("COA")] has been issued federal courts of appeals lack

jurisdiction to rule on the merits of appeals from habeas petitioners"). Like a COA in the habeas context, Section 501(b) mandates a necessary step that must occur before jurisdiction vests. Further, the caption of Section 501(b) uses the term "jurisdiction." While the caption may not, on its own, tip the scales towards finding a clear indication of Congressional intent, it is certainly (especially in combination with the statutory text) evidence of Congress' intent that § 501(b) deals with a jurisdictional, rather than a claims-processing, requirement. See Henderson, 562 U.S. at 439.

Second, an assessment of the statutory structure supports the conclusion that Section 501(b) is jurisdictional. Title 29, Chapter 11 of the United States Code contains the Labor-Management Reporting and Disclosure Act. Section 501(b) is located in "Subchapter VI—Safeguards for Labor Organizations." The other subchapters deal with different topics, like elections (Subchapter V) and the Bill of Rights of Members of Labor Organizations (Subchapter II). Many of these other subchapters have jurisdictional provisions. For example, 29 U.S.C. § 412 (located in Subchapter II) is titled "Civil action for infringement of rights; jurisdiction" and gives a broad right to sue in federal district court for violations of Subchapter II. See also § 440 (jurisdiction for the Secretary of Labor to sue for violations of

10

Subchapter III); § 482(b) (setting a 60-day limitations period for the Secretary to sue a labor organization under subchapter V).

Thus, the statutory scheme teaches that Congress intended that the subchapters of Title 29, Chapter 11 were to have different jurisdictional requirements. There is not a "catch-all" jurisdictional section that applies to the entire Chapter. See Henderson, 562 U.S. at 439-40 ("Congress elected not to place the 120-day limit in the VJRA subchapter entitled 'Organization and Jurisdiction.'"); see also Arbaugh, 546 U.S. at 514-15 (placement of a provision in a "definitional" portion of the statute militates towards that provision being non-jurisdictional). And, compared to other provisions of Chapter 11, Congress wrote Section 501(b) in a more restrictive way. Compare 29 U.S.C. § 412 ("Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate") with 29 U.S.C. § 501(b) (union "member may sue. . .in any district court of the United States. . . .No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte"). In other words, comparing provisions throughout Chapter 11, it is reasonable to conclude that Congress intended different

Subchapter III); § 482(b) (setting a 60-day limitations period for the Secretary to sue a labor organization under subchapter V).

Thus, the statutory scheme teaches that Congress intended that the subchapters of Title 29, Chapter 11 were to have different jurisdictional requirements. There is not a "catch-all" jurisdictional section that applies to the entire Chapter. See Henderson, 562 U.S. at 439-40 ("Congress elected not to place the 120-day limit in the VJRA subchapter entitled 'Organization and Jurisdiction.'"); see also Arbaugh, 546 U.S. at 514-15 (placement of a provision in a "definitional" portion of the statute militates towards that provision being non-jurisdictional). And, compared to other provisions of Chapter 11, Congress wrote Section 501(b) in a more restrictive way. Compare 29 U.S.C. § 412 ("Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate") with 29 U.S.C. § 501(b) (union "member may sue. . .in any district court of the United States. . . .No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte"). In other words, comparing provisions throughout Chapter 11, it is reasonable to conclude that Congress intended different

jurisdictional provisions to apply to Chapter 11 actions and that Section 501(b) provides a restrictive grant of jurisdiction.

Finally, the purpose of Section 501(b) also teaches that Congress intended to limit this Court's jurisdiction over suits such as the one filed by Holmes. As the Second Circuit held in Dinko, "the requirements of section 501(b) were designed 'to protect union officials from unjust harassment.'. . .[W]e take that statutory purpose very seriously." Dinko v. Wall, 531 F.2d 68, 73 (2d. Cir. 1976). In other words, Congress' intention was to insulate union officials from meritless claims by requiring certain predicate procedural steps to be taken. The purpose underlying the statute suggest a "limitation on a class of cases a court may entertain," Fort Bend, slip op. at 6, or, in other words, the articulated statutory purpose supports the conclusion that Section 501(b) is a jurisdictional rule.

In sum, Section 501(b) is properly understood as a limitation on the Court's subject matter jurisdiction. So now, it is necessary to determine whether Holmes satisfied the statute's requirements.[5]

---

[5] In his reply brief on subject matter jurisdiction, Holmes argues that, assuming the Defendants are correct on their jurisdictional argument, "dismissal would be wasteful." ECF No. 51 at 1. Whatever the merits of that argument, simply put, the Court lacks subject matter jurisdiction over Holmes' action. Congress has placed a limit on this Court's jurisdiction, and it is not for Holmes (or the Court) to determine that enforcing such a limitation is "wasteful."

**b. Holmes Has Failed To Seek Leave Of Court**

As discussed above, Section 501(b) requires that Holmes: (1) make a demand on the Union; (2) request leave of court upon a verified application; and (3) show good cause. 29 U.S.C. § 501(b). The parties devoted their briefing largely to arguing about whether Holmes has satisfied these requirements of Section 501(b). However, it is unnecessary to determine whether Holmes has satisfied the first or third prerequisites or the verification aspect of the leave of court requirement. That is so because, as he acknowledges, Holmes never sought "leave of court" before filing suit. Because he has not satisfied the key jurisdictional requirement, Holmes has failed to establish that the Court has subject matter jurisdiction.

Holmes acknowledges that he never sought leave of court before he filed the FAC. See ECF No. 49 at 6. Nor did he "verify" the allegations in the FAC until after the Court requested the additional briefing on subject matter jurisdiction. Id.; Ex. 1,[6] (ECF No. 49-1). He argues instead that, considering his attached verification, "the First Amended Complaint is verified, and Mr. Holmes respectfully requests the Court determine that filing the

---

[6] This document is entitled PLAINTIFF OLIVER HOLMES' VERIFICATION OF THE FIRST AMENDED COMPLAINT and was attached as an exhibit to Holmes' opening brief on subject matter jurisdiction. ECF No. 49.

13

Complaint with this Court constitutes a request for leave to file a verified complaint, pursuant to Section 501(b)." ECF No. 49 at 6.

Holmes relies on the Third Circuit's decision in Sabolsky v. Budzanoski, 457 F.2d 1245, 1249 (3d Cir. 1972), for the proposition that "a lack of formality in observing the procedures of Section 501(b) will not bar a court from granting leave, where appropriate" (citation omitted). In Sabolsky, over 100 coal miners had filed a verified complaint with the district court, alleging that their union had violated fiduciary duties under LMRDA. Id. at 1247-48. Although not entirely clear from the opinion, it appears that the district court had dismissed the union members' case for lack of jurisdiction because they had failed to "apply for leave of court to file this suit." Id. at 1249.

The Third Circuit remanded to the district court on this determination, holding that the district court was "to grant leave, nunc pro tunc, to file the complaint." Id. at 1250. As the Court explained:

> The complaint in this case was verified by over 100 plaintiffs. Section 501(b) specifically allows an "ex parte" grant of leave to proceed. The appellants contend that by filing the complaint they, in effect, made an ex parte application to the court. It has been held that a lack of formality in observing the procedures of Section 501(b) will not bar a court from granting leave, where appropriate. Executive Board, Local Union No. 28 v. I.B.E.W., 184 F.Supp. 649

14

> (D.Md.1960). As the court said in <u>Horner v. Ferron</u>, 362 F.2d 224 (9th Cir. 1966), "[t]he allegations of the <u>verified complaint</u> may be sufficient to enable the court to determine whether there is 'good cause.'"

<u>Id.</u> at 1249-50 (emphasis added).

Holmes is correct that <u>Sabolsky</u> permitted the verified complaint to be treated as a request for leave of court. However, he ignores the fact that, in <u>Sabolsky</u> (and the <u>Horner</u> case cited therein), the plaintiff(s) had filed a "verified complaint" and the courts there excused the plaintiff's failure to seek leave of court. Here, Holmes neither sought leave of court nor filed a "verified complaint." Instead, after learning of the Court's concern about jurisdiction, he filed his "verification" (ECF No. 49-1) as an attachment to his brief on jurisdiction. In other words, he asks the Court to excuse not one, but two jurisdictional failures on his part. <u>Sabolsky</u> does not support that position, and Holmes has cited no authority to the contrary. <u>See</u> <u>Austin v. Trandell</u>, 207 F. Supp. 2d 616, 620 (E.D. Mich. 2002) (rejecting reliance on <u>Sabolsky</u> where no verified complaint had been filed); <u>id.</u> at 622 ("[T]he leave of court requirement is a jurisdictional prerequisite to suit."); <u>Commer</u>, 272 F. Supp. 2d at 337; <u>see also</u> <u>Hoffman v. Kramer</u>, 362 F.3d 308, 313-14 (5th Cir. 2004) (plaintiff first sought leave of court to file § 501 claim and district court held a hearing on Hoffman's request for leave to file suit,

15

determining, however, that Hoffman failed the "good cause" requirement).

Moreover, it is quite important that a plaintiff seek leave of court because, when a motion for leave is filed, the views of the Union officials are entitled to be heard on whether Holmes has demonstrated good cause. Proceeding as Holmes suggests forecloses the opportunity for union officials to present their views on that topic. That is no mean deprivation. To the extent that Sabolsky may hold otherwise, the Court declines to follow Sabolsky because it is at odds with the clear text of Section 501(b).

That the statute permits an ex parte filing of the motion for leave to file the Complaint does not mean that an ex parte filing is appropriate. And, it should be the rare case that any court should hear important matters ex parte. Indeed, the Court rarely allows ex parte hearings and then only in cases of genuine general emergency, such as the need to stop theft or to preserve the Court's jurisdiction. And even then, the adverse party (here the Union officials) are given notice and an immediate opportunity to be heard about whether the ex parte action should stand.

Courts must remember that "statutes extending federal jurisdiction, such as Section 501(b), are narrowly construed so as not to reach beyond the limits intended by Congress." Phillips, 403 F.2d at 828. Here, Congress required a plaintiff to seek leave of court before a court can entertain an action under 29 U.S.C. §

501(b). Holmes clearly did not do that, and, accordingly, the Court does not have jurisdiction over Count I of the FAC. It thus is unnecessary to decide whether Holmes made proper demand on the union or whether he has shown "good cause."

Count I will be dismissed without prejudice because Holmes may have a valid claim and may be able to satisfy Section 501(b).

### C. The Court Cannot Exercise Supplemental Jurisdiction Over State Law Claims in Counts II through V

The Court is asked to exercise supplemental jurisdiction over Holmes' state law claims pursuant to 28 U.S.C. § 1367.[7] Of course, to do so, there must be a "civil action of which the district courts have original jurisdiction."

As explained above, the Court lacks original jurisdiction over Count I because of Holmes' failure to satisfy 29 U.S.C. § 501(b)'s "leave of court" requirement. Accordingly, there is no basis upon which the Court has supplemental jurisdiction under Section 1367(a). See ESAB Group Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Ballard v. Fernandez, 599 Fed. Appx. 333, 334 (10th Cir. 2015) (unpublished) ("Furthermore, without any basis to exercise original jurisdiction under §§ 1331 or 1332, the

---

[7] It is also possible that jurisdiction over state law claims could exist pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). However, it is clear from the FAC that Holmes and the Defendants are citizens of Virginia, see FAC ¶¶ 1-5; thus, there is no diversity of citizenship, and, thus, Section 1332 affords no basis for jurisdiction.

district court had no authority to exercise jurisdiction over Plaintiff's claim under § 1367."); cf. Miller v. Herman, 600 F.3d 726, 738 (7th Cir. 2010). Counts II through V of the FAC will be dismissed without prejudice.

**CONCLUSION**

For the reasons set forth above, the FAC will be dismissed without prejudice for lack of subject matter jurisdiction.

It is so ORDERED.

/s/ *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July  1 , 2019